MARILYN M. GARDNER                                                    PLAINTIFF

v.

WESTERN KENTUCKY UNIVERSITY, *et al.*                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants' Motions to Dismiss.  DN 4.  Plaintiff

has responded.  DN 6.  Defendants have replied.  DN 7.  This matter is now ripe for adjudication.

For the following reasons Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff Marilyn M. Gardner ("Garnder") is employed as an associate professor of Public

Health at Western Kentucky University ("WKU") in Bowling Green, Kentucky.  DN 1, ¶ 17; DN

5, ¶ 9.  Gardner brings suit against WKU; Gary Ransdell, the president of WKU, in his official

and individual capacities; the Board of Regents of WKU ("Board of Regents"); and Melissa

Dennison, Yevette Haskins, Fredrick A. Higdon, Colton Jessie, Jim Johnson, James Kennedy,

Jim Meyer, Dr. Patrica Mintner, J. David Porter, Rob Wilkey, and Laurence J. Zielke, all in their

official capacity as members of the Board of Regents.  DN 1, ¶¶ 7-9.  Against the Defendants,

Gardner seeks declaratory, injunctive, and monetary relief for alleged violations of Title I of the

Americans with Disabilities Act ("ADA") (42 U.S.C. § 12111 *et seq.*), Section 504 of the

Rehabilitation Act of 1973 ("Rehabilitation Act") (29 U.S.C. § 794), and the Kentucky Civil

Rights Act ("KCRA") (K.R.S. § 344.010 *et seq.*).  DN 1, ¶¶ 24, 48.  The Defendants seek to

dismiss these claims on legal and procedural grounds.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.*

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

## DISCUSSION

### I. Claims Against WKU.

Gardner seeks injunctive and compensatory relief against Western Kentucky University ("WKU") for violations of the ADA, Rehabilitation Act, and the KCRA. WKU admits that it is subject to the ADA, Rehabilitation Act, and the KCRA. DN 5, ¶ 9. The Court's analysis of

Gardner's claims against WKU is two-pronged and considers Gardner's claims for monetary damages first and her request for injunctive relief second.

## A. Monetary Damages under the ADA, Rehabilitation Act, and KCRA.

In her Complaint, Gardner seeks "all appropriate damages, including actual and statutory[,]" under the ADA, Rehabilitation Act, and the KCRA. DN 1, p. 9, ¶ 4. Case law is clear that Gardner is only entitled to seek monetary damages for violations of the Rehabilitation Act and the KCRA, not Title I of the ADA. As such, the ADA monetary damage claim against WKU will be dismissed.

In *Board of Trustees of the University of Alabama v. Garrett*, the Supreme Court decided "whether employees of the State of Alabama may recover money damages by reason of the State's failure to comply with the provision of Title I of the Americans with Disabilities Act of 1990." *Bd. of Trs. of the Univ. Of Ala. v. Garrett*, 531 U.S. 356, 360 (2001). In answering the issue before it, the Court held that Congress failed to validly abrogate the states' Eleventh Amendment sovereign immunity when enacting Title I of the ADA, and, as a result, the statute did not provide a private right of action for monetary damages against the states. *Id.* at 363-74. The holding of *Garrett* governs the present case and dictates that Gardner cannot maintain an action for monetary damages against WKU for violations of Title I of the ADA. Because Congress failed to properly abrogate the states' sovereign immunity when enacting the statute, Gardner's claim for monetary damages under Title I of the ADA is dismissed.

Although Gardner cannot maintain a claim for monetary damages under Title I of the

ADA, a suit for monetary damages under the Rehabilitation Act[1] and the KCRA[2] can proceed so

long as those claims have been sufficiently pled.  The Court must now determine whether the

alleged violations of theses Acts have been sufficiently pled so as to overcome WKU's motion to

dismiss.  "When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure, the district court must accept all of the allegations in the complaint as true,

and construe the complaint liberally in favor of the plaintiff."  *Lawrence v. Chancery Court of

Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999)

In her Complaint, Gardner claims to suffer from myasthenia gravis and bilateral hearing

loss, which renders her a qualified individual with a disability under the Rehabilitation Act and

the KCRA.  DN 1, ¶¶ 10-11.  She claims to have experienced at least two work-related injuries

as a result of her worsening symptoms.  *Id.* at ¶¶ 18-19.  After each injury, Gardner allegedly

made one or more requests for reasonable work-place accommodations, which WKU did not

provided or failed to timely provide.  *Id*. at ¶¶ 21-22.  Finally, Gardner claims that WKU

retaliated against her as a result of her accommodation requests, including a denial of

compensation and other benefits.  *Id.* at ¶ 24.

The Court finds that the factual allegations made against WKU in Gardner's complaint

---

[1] In *Barnes v. Gorman*, the Supreme Court found that punitive damages were not available under Section 504 of the Rehabilitation Act.  *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).  Although punitive damages were not available, "remedies for violations of . . . § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964 . . . ."  *Id.* at 185.  Under Title VI, and thus § 504 of the Rehabilitation Act, there is an implied private right of action for compensatory damages against the states and their agencies.  *Id.* at 187-89.

[2] *See* KRS § 344.450 ("Any person injured by any act in violations of the provisions of [the KCRA] shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained, together with the costs of the law suit.").

are "enough to raise a right to relief above the speculative level on the assumption that all the allegation in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Gardner's allegations against WKU are facially plausible and contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). WKU's motion to dismiss is denied with respect to the monetary damage claims arising under the provisions of § 504 of the Rehabilitation Act or the KCRA.

### B. Injunctive Relief under the ADA, Rehabilitation Act, and KCRA.

In addition to monetary damages, Gardner seeks injunctive relief against WKU for violations of Title I of the ADA, the Rehabilitation Act, and the KCRA. DN 1, p. 9, ¶ 3. Injunctive relief is available as a remedy for violations of these statutes. *See Garrett*, 531 U.S. 374 n.9 ("[The ADA] standards can be enforced by . . . private individuals in actions for injunctive relief."); 29 U.S.C. § 794a(2) (providing that the remedies set forth under the Civil Rights Act of 1964, which includes injunctive relief, are available for violations of the Rehabilitation Act); KRS § 344.450 (authorizing injunctive relief for violations of the KCRA).

Gardner's claims for injunctive relief will survive WKU's motion to dismiss so long as those claims "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. After examining Gardner's Complaint, the Court finds that her claims for injunctive relief have been sufficiently pled. Most significantly, Gardner asserts that WKU has failed to provide reasonable accommodation for her disability after multiple accommodation requests. DN 1, ¶¶ 18-22, 30, 39, 45. These allegation, if true, (as the Court presumes that they are for the purposes of this motion to dismiss) would give rise to a continuing violation of law that injunctive relief

5

could remedy.  WKU's motion to dismiss Gardner's claims for injunctive relief under Title I of the ADA, the Rehabilitation Act, and the KCRA is denied.

Summarizing the above analysis, WKU's motion to dismiss monetary damages in regard to alleged violations of Title I of the ADA is granted because there is no private right of action for monetary damages under the Supreme Court's holding in *Garrett*.  WKU's motion to dismiss monetary damages under the Rehabilitation Act and the KCRA, and the motion to dismiss Gardner's injunctive relief claims under Title I of the ADA, the Rehabilitation Act, and the KCRA are denied.

## II. Official Capacity Claims Against Ransdell, the Board of Regents, and Members of the Board of Regents.

In addition to WKU, Gardner has sued Defendants Ransdell, the WKU Board of Regents, and the members of the Board of Regents, in their official capacity, ("Official Capacity Defendants") for violations of the ADA, the Rehabilitation Act, and the KCRA.  DN 1, ¶¶ 8-9. Again, the Court will consider the claims against the Official Capacity Defendants in two parts, addressing monetary damages first and injunctive relief second.

### A. Monetary Damages and the Official Capacity Defendants

Gardner's seeks to recover monetary damages from the Official Capacity Defendants for violations of the Title I of the ADA, the Rehabilitation Act, and the KCRA.  The monetary damage claims against these defendants will be dismissed on two grounds.  First, and only in regard to money damages arising under the ADA, there is no private right of action for monetary damages under Title I of the ADA.  *See Garrett*, 531 U.S. at 363-74.

Second, even if the *Garrett* rule was not binding, the monetary damage claims against the Official Capacity Defendants under the ADA, the Rehabilitation Act, and the KCRA would be

6

dismissed because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). A suit against a state officer in his or her official capacity:

> '[G]enerally represents only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citations omitted). WKU received proper notice of this present suit, responded with the other defendants, and is the real party in interest in this case. Gardner has not asserted any monetary damage claims against Ransdell, the Board of Regents, or members of the Board that have not been raised against WKU. Any recovery paid by the Official Capacity Defendants would necessarily be paid out of WKU's coffers. Because WKU, as a government entity, is the real party in interest in this case, the official capacity claims against Ransdell, the Board of Regents, and the members of the Board for monetary damages under the ADA, the Rehabilitation Act, and the KCRA are dismissed.

### B. Injunctive Relief and the Official Capacity Defendants

In addition to monetary damages, Gardner seeks injunctive relief against the Official Capacity Defendants. The doctrine sets forth by the Supreme Court in *Ex parte Young* allows Gardner's injunctive relief claims to proceed against Official Capacity Defendants so long as such claims have been sufficiently pled.

In *Ex Parte Young*, the Supreme Court carved out an exception to state sovereign immunity provided by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908).

"Under *Ex parte Young*, suits against state officials seeking *equitable relief* for ongoing

violations of federal law are not barred by the Eleventh Amendment." *Mich. Bell Tel. Co. v.

Climax Tel. Co.*, 202 F.3d 862 (6th Cir. 2000) (citing *Ex parte Young*, 209 U.S. 159-60)

(emphasis added).[3]  Thus, under the *Ex parte Young* doctrine, Gardner's claim for injunctive

relief will be allowed to proceed against the Official Capacity Defendants so long as her

allegations are pled above a speculative level.  *Twombly*, 550 U.S. at 555.

In her Complaint, Gardner alleges that she made multiple requests to the defendants for

accommodation after sustaining work-place injuries.  DN ¶¶ 18-19.  Gardner further asserts that

the defendants knew of her disability and subsequently discriminated against her in violation of

the ADA, Rehabilitation Act, and KCRA by failing to reasonable accommodate her.  DN ¶¶ 30,

32, 38-39, 44-45.  The Court must take these allegations as true.  *See  Lawrence v. Chancery

Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999).  As a result, the Court finds that the

allegations in Gardner's Complaint rise above the speculative level.  The Official Capacity

Defendants' motion to dismiss with respect to Gardner's injunctive relief claim is denied.

In summary, Gardner has sued Defendants Ransdell, the WKU Board of Regents, and the

 members of the Board of Regents, in their official capacity, for monetary and injunctive relief.

The Official Capacity Defendants' motion to dismiss with respect to the monetary damages is

granted.  The Official Capacity Defendants' motion to dismiss with respect to injunctive relief is

---

[3] The *Ex parte Young* doctrine only applies to violations of federal law and does not
abrogate a state's sovereign immunity where a plaintiff sues a state official on the basis of state
law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  In the present case,
however, Gardner's injunctive relief claim based on the KCRA, a state law, against state
officials will be allowed to proceed, if sufficiently pled, because the Kentucky has waived its
immunity under the statute.  *See* KRS § 344.010(1) (including in the definition of "person" the
"state [and] any of its political subdivisions or agencies").

denied.

## II. Individual Capacity Claims Against Ransdell.

Gardner seeks to recover against Ransdell in his individual capacity. Under the federal

and state laws at issue, however, Ransdell cannot be found liable for actions taken in his

individual capacity, and any claims based on his individual capacity will be dismissed.

### A. Federal Law and Ransdell's Individual Capacity.

Gardner asserts that she can recover against Ransdell in his individual capacity for

discriminatory and retaliatory actions violating Title I of the ADA and Section 504 of the

Rehabilitation Act. *See* DN 1, ¶¶ 8, 25-39, 46-48. Before Gardner can recover against Ransdell

in his individual capacity, Ransdell must first be subject to the provisions of the ADA and the

Rehabilitation Act.

### 1) No Individual Liability Exists under the ADA.

The basic rule of the ADA is that "[n]o covered entity shall discriminate against a

qualified individual on the basis of disability in regard to . . . [the] privileges of employment."

42 U.S.C. § 12112(a). In the statutory scheme, a "covered entity" includes an "employer," who

is defined as a "person engaged in an industry affecting commerce who has 15 or more

employees for each working day in each of 20 or more calendar weeks in the current or

preceding calendar year, and any agent of such person . . ." subject to certain exceptions not

applicable here. 42 U.S.C. § 12111(5)(A). A person who "do[es] not independently qualify

under the statutory definition of employers may not be held personally liable in ADA cases."

*Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999). "[T]he [ADA] does

not provide for individual liability, only for employer liability." *Mason v. Stallings*, 82 F.3d

1007, 1009 (11th Cir. 1996). "[I]ndividuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA." *E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276 (7th Cir. 1995).

Gardner has sued Ransdell in his individual capacity for discriminatory and retaliatory actions taken in violation of the ADA. DN 1, ¶¶ 8, 24-32, 46-48. Ransdell, in his individual capacity, is not subject to the ADA, however, because he does not meet the statutory definition of "employer" and cannot be held liable for violations of the statute. Gardner has failed to state an individual capacity claim against Ransdell for which relief can be granted. The individual capacity claim against Ransdell for violating the ADA is dismissed.

### 2) No Individual Liability Exists under the Rehabilitation Act.

In addition to the ADA claims, Gardner has sued Ransdell, in his individual capacity, for violating both the discrimination and retaliation provisions of the Rehabilitation Act of 1973. DN 1, ¶¶ 8, 33-39, 46-48. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Case law on both the discrimination and retaliation claims shows that Ransdell cannot be individually liable for violations of the Rehabilitation Act.

Turning first to Gardner's retaliation claim against Ransdell, the Sixth Circuit previously addressed whether the Rehabilitation Act creates a private cause of action against employers in their individual capacities for retaliatory employment practices. *See Hiler v. Brown*, 177 F.3d 542, 544 (6th Cir. 1999). The *Hiler* Court found, "[I]ndividuals who do not otherwise meet the

10

statutory definition of 'employer' cannot be held liable under the Rehabilitation Act's anti-retaliation provision." *Id.* at 547. The Rehabilitation Act defines "employer" as that term is defined in Title VII. *See id*. at 546 n.5 ("The ADA . . . and the Rehabilitation Act borrowed the definition of 'employer' from Title VII."). Under Title VII an "employer" is a "person engaged in a industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b). Ransdell, in his individual capacity, does not come within this definition of "employer." Gardner has failed to state an individual capacity claim against Ransdell for which relief can be granted. The individual capacity claim against Ransdell for violating the retaliation provisions of the Rehabilitation Act is dismissed.

Turning next to Gardner's discrimination claim against Ransdell, courts have found that individuals cannot be held liable for discriminatory actions that would otherwise be barred by the Rehabilitation Act. "Indeed, numerous courts . . . have held that supervisors, sued in their individual capacities, are not included within the definition of 'employer' under Title VII and its sister civil rights statutes [the ADA, ADEA, and Rehabilitation Act], and accordingly cannot be held personally liable for discrimination." *Hiler*, 177 F.3d at 546 (citations omitted); *see Bevington v. Ohio Univ.*, 93 Fed. Appx. 748, *5 (6th Cir. 2004) ("[A plaintiff] may not maintain an action under the [Rehabilitation Act] against the *individuals* identified in his complaint because the [Rehabilitation Act] does not impose liability upon individuals.") (emphasis added) (citing *Hiler*, 177 F.3d at 547). Simply put, the Rehabilitation Act does not impose liability on individuals. Gardner has failed to state an individual capacity claim against Ransdell for which relief can be granted. The individual capacity claim against Ransdell for violating the

discrimination provisions of the Rehabilitation Act is dismissed.

**B. State Law and Gardner's Individual Capacity Claims Against Ransdell.**

Gardner asserts that she is entitled to recover under state law for violations of the

Kentucky Civil Rights Act ("KCRA") by Ransdell in his individual capacity. *See* DN 1, *¶¶ 8,*

*40-48.* The KCRA provides, "It is an unlawful practice for an employer . . . to discriminate

against an individual with respect to compensation, terms, conditions, or privileges of

employment . . . because the person is a qualified individual with a disability . . . ." K.R.S. §

344.040(1)(a). Before Gardner can recover against Ransdell in his individual capacity, Ransdell

must first be subject the KCRA.

The prohibition on discrimination in the KCRA applies only to an "employer". For the

purposes of determining discrimination based on disability, the KCRA defines an "employer" as

"a person engaged in an industry affecting commerce who has fifteen (15) or more employees

each working day in each of twenty (20) or more calendar weeks in the current or preceding

calendar year, and any agent of that person . . . ." K.R.S. § 344.030(2). Courts in the Sixth

Circuit have held that a person has no individual liability for violations of the KCRA unless he

or she fits the definition of "employer" in the statute. *See Wathen v. General Elec. Co.*, 115 F.3d

400, 404-05 (6th Cir. 1997); *Walker v. MDM Servs. Corp.*, 997 F.Supp. 822, 823 (W.D. Ky.

1998) ("An individual employee/supervisor, who does not otherwise qualify as an 'employer,'

may not be held personally liable under . . . the Kentucky Civil Rights Act.").

Ransdell, in his individual capacity, does not meet the definition of "employer" in the

KCRA. Gardner has failed to state an individual capacity claim against Ransdell for which relief

can be granted. The individual capacity claim against Ransdell for violating the KCRA is

dismissed.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss be:

GRANTED to WKU for  monetary damages under Title I of the ADA;

DENIED to WKU for monetary damages under the Rehabilitation Act and the KCRA;

DENIED to WKU for injunctive relief under Title I of the ADA, the Rehabilitation Act, and the KCRA;

GRANTED to Ransdell, the WKU Board of Regents, and the members of the Board, in their official capacity, for monetary damages under Title I of the ADA, the Rehabilitation Act, and the KCRA;

DENIED to Ransdell, the WKU Board of Regents, and the members of the Board, in their official capacity, for injunctive relief under Title I of the ADA, the Rehabilitation Act, and the KCRA; and

GRANTED to Ransdell, in his individual capacity, for monetary damages and injunctive relief under Title I of the ADA, the Rehabilitation Act, and the KCRA.