UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

MARILYN M. GARDNER,                                                                          Plaintiff,

v.                                                                          Civil Action No. 1:11-cv-79-DJH-LLK

WESTERN KENTUCKY UNIVERSITY,
et al.,                                                                                    Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marilyn M. Gardner was hired by Defendant Western Kentucky University (WKU) in 2001 as an assistant professor in the school's Department of Public Health. In 2006, she requested workplace accommodations to address myasthenia gravis, an autoimmune disorder. This lawsuit arises out of the defendants' alleged wrongdoing in connection with those and later-requested accommodations. The defendants have filed a motion for summary judgment on Gardner's remaining claims of retaliation and failure to accommodate. (Docket No. 30) Because Gardner has failed to establish a genuine dispute of material fact with respect to any of her claims, the motion for summary judgment will be granted.

I.

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136

1

(6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be deemed undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2)-(3). To survive a motion for summary judgment, the nonmoving party must establish a genuine dispute of material fact with respect to each element of each of her claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

## II.

Gardner asserts claims of retaliation and failure to accommodate under the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Kentucky Civil Rights Act. As the three statutes are interpreted using the same standards, the following analysis applies to all of Gardner's claims. *See Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir. 2007)); *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007) (citing *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 190-91 (2002)).

**A.     Failure to Accommodate**

To withstand summary judgment on her claim of failure to accommodate, Gardner must make a prima facie showing on five elements: "(1) she is disabled under the meaning of the ADA; (2) she is otherwise qualified; (3) [WKU] knew or had reason to know of her disability; (4) she requested an accommodation; and (5) [WKU] failed to provide the necessary accommodation." *Burdett-Foster v. Blue Cross Blue Shield of Mich.*, 574 F. App'x 672, 680 (6th Cir. 2014) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). The fifth element is not satisfied unless Gardner has identified the necessary accommodation. *See id.* ("'The

employee also bears the burden of proposing reasonable accommodations; an employee's claim must be dismissed if the employee fails to identify and request such reasonable accommodations.'" (quoting *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011))); *see also Willard v. Potter*, 264 F. App'x 485, 487 (6th Cir. 2008) ("Implicit in the plaintiff's duty to demonstrate that the employer failed to provide the necessary accommodation is the duty to identify the necessary accommodation."). If she fails to establish a prima facie case, the Court need not consider whether she could reasonably have been accommodated. *Willard*, 264 F. App'x at 488 (citing *Gaines v. Runyon*, 107 F.3d 1171, 1176 (6th Cir. 1997)).

According to Gardner, three requested accommodations are at issue in this case: (1) an office with natural light, (2) modification of her class schedules and office hours to reduce time required on campus, and (3) remote attendance at meetings. (D.N. 33 at PageID # 1860-61) However, she admits that she was given an office with a window, as requested, and that her schedule was adjusted so that she teaches all classes online and is not required to post regular office hours. (*See* D.N. 23 at PageID # 284; D.N. 33 at PageID # 1860-61) Thus, the only dispute pertains to her request to attend department meetings remotely.

Gardner asked WKU to provide a means by which she could participate in meetings without being physically present. Specifically, she requested the use of a program called Adobe Connect. (D.N. 28 at PageID # 1447-48) But she acknowledges that Adobe Connect "did not work" and that another attempted accommodation, interactive video system, was similarly ineffective. (D.N. 33 at PageID # 1862) After Gardner complained that she could not hear other meeting participants and was unable to communicate on days when her condition affected her speech, WKU employed "a large conference telephone" intended for use in large meetings, and Gardner was told that she could submit written comments before or after meetings if she was

3

unable to speak. (D.N. 23-3 at PageID # 624) Gardner was also advised that any meeting absences due to her illness would be excused. (*Id.*)

Gardner complains that "[r]ather than attempting to find a means to effectively allow remote access to meetings, Defendants have now limited her remote access to speaker phone." (D.N. 33 at PageID # 1862) As noted above, however, she admits that the defendants tried at least two other accommodations, including the program she requested, without success. (*See* D.N. 33 at PageID # 1862) The defendants state that "WKU is unaware of any other technology that would accomplish what [Gardner] has demanded." (D.N. 30-1 at PageID # 1833) Gardner's response brief does not contain a single citation to the record showing that the current accommodation is inadequate; that she requested a more effective accommodation that was denied; or that the defendants were unwilling to provide a better accommodation if one were proposed. (*See id.* at PageID # 1857, 1861-63) Nor does she identify an accommodation she believes would be superior to the conference phone currently being utilized. In other words, she has presented no evidence that the accommodation she seeks even exists. To the extent Gardner faults the defendants for not providing this hypothetical accommodation, the Court finds that she has failed to identify and propose a reasonable accommodation. *See Willard*, 264 F. App'x at 487; *Cassidy v Detroit Edison Co.*, 138 F.3d 629, 635 (6th Cir. 1998) (affirming summary judgment for defendant where plaintiff's request for allergen-free work environment "was simply too vague to reasonably inform Defendant of a reasonable accommodation, or was otherwise simply unavailable"; plaintiff failed to establish genuine issue of material fact as to the existence of such an environment). She thus fails to establish a prima facie case of failure to accommodate.

Notwithstanding this failure, Gardner appears to argue that she can base a cause of action on the defendants' delay in responding to her initial request for accommodations, their requirement of doctor-recommended accommodations, and their alleged failure to engage in the interactive process required under ADA regulations. (*See* D.N. 33 at PageID # 1859) Her argument on these points is meritless. First, an employer's failure to engage in the interactive process is not actionable where the plaintiff has not made "a prima facie showing that [s]he proposed a reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014); *see also Willard*, 264 F. App'x at 488. Likewise, any delay in providing the requested accommodations is irrelevant because Gardner admits that she ultimately received those accommodations. *See Gerton v. Verizon S.*, 145 F. App'x 159, 168 (6th Cir. 2005).

Finally, Gardner's contention that the defendants violated the ADA by requiring medical proof of her need for accommodations is contrary to Sixth Circuit law.

> An "employer need not take the employee's word for it that the employee has an illness that may require special accommodation. Instead, the employer has the ability to confirm or disprove the employee's statement. If this were not the case, every employee could claim a disability warranting special accommodation yet deny the employer the opportunity to confirm whether a need for the accommodation exists."

*Kennedy v. Superior Printing Co.*, 215 F.3d 650, 655 (6th Cir. 2000) (quoting *EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1094-95 (6th Cir. 1998)). WKU was entitled under the ADA to require medical documentation showing that the accommodations Gardner requested were necessary. *See id.* (noting that "[t]he ADA 'permits employers . . . to make inquiries or require medical examinations necessary to the reasonable accommodation process.'" (omission in original) (quoting 29 C.F.R. pt. 1630, App. § 1630.14(c))). In any event, Gardner has presented no evidence that she was denied an accommodation for lack of doctor approval.

**B.      Retaliation**

With respect to her claim of retaliation, Gardner must make a prima facie showing that (1) she engaged in protected activity; (2) WKU was aware of her protected activity; (3) WKU took adverse action against her; and (4) "there was a causal connection between the protected activity and the adverse action." *A.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013) (citing *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001)).  To constitute an adverse action, "a retaliatory action must be enough to dissuade a reasonable person from engaging in the protected activity; 'petty slights or minor annoyances' cannot qualify."  *Id.* at 698 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Gardner's retaliation claims fail because neither of the retaliatory acts she identifies—failing to compensate her as agreed for her work on a report and requiring updated information regarding her disabilities—amounts to adverse action.

**1.      Compensation for CEPH Report**

In fall 2007, Gardner assumed responsibility for preparing a report related to the School of Public Health's accreditation (the "CEPH report").  (D.N. 23 at PageID # 313-14)  She contends that she and then-department head Dr. Gary English reached an agreement in October 2007 regarding the compensation she would receive for her work on the report, which took several months.  (D.N. 33 at PageID # 1853)  Gardner sent an e-mail to English on October 10, 2007, outlining her compensation requests.  (D.N. 23 at PageID # 313)  She testified that English "agreed verbally to the[] conditions" set out in her e-mail.  (*Id.* at PageID # 314)  However, she received no written response until February 14, 2008, after she sent a follow-up message to English seeking confirmation of their agreement.  (*See id.* at 315)  In his February 14 response, English informed Gardner that he could not agree to some of her requests.  (*Id.*)

6

According to Gardner, WKU's failure to pay her the agreed-upon compensation constitutes retaliation because English's response came the day after a meeting was held to discuss her requested accommodations. (*See* D.N. 33 at PageID # 1868) During or immediately following the meeting, Gardner had raised the issue of the CEPH report and was advised by associate vice president Dr. Richard Miller to obtain written confirmation of her agreement with English. (*See id.* at PageID # 1855; D.N. 23 at 314-15; D.N. 26 at PageID # 1067) Because "[s]he never received the agreed[-]upon compensation," Gardner contends, "there is a temporal relationship between the protected activity of requesting accommodations and the adverse employment action of failure to be compensated as agreed upon for CEPH." (D.N. 33 at PageID # 1868)

While she recites the elements of a prima facie case of retaliation and notes that "[a] temporal proximity between the protected activity and the adverse employment action can provide [the necessary] causal connection," Gardner does not attempt to establish that the "failure to be compensated as agreed upon" for the CEPH report constitutes an adverse action. (*Id.* at 1867-68) She points to no evidence of a discrepancy between the compensation she sought and the compensation she actually received.[1] In short, Gardner has not presented evidence from which the Court could find that the defendants' failure to honor Gardner's compensation requests was "enough to dissuade a reasonable person from engaging in the protected activity." *A.C.*, 711 F.3d at 698.

Nor has Gardner shown a causal relationship between her protected activity of requesting accommodations—which occurred sometime in January 2008—and the supposedly adverse decision not to compensate her as previously agreed. Temporal proximity alone may satisfy the

---

[1] Gardner testified that only "parts of" her proposal were rejected. (D.N. 23 at PageID # 315)

7

causal-connection element, but only "where the adverse action comes 'very close in time after the exercise of protected activity.'" *Id.* at 699 (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)). Here, the lapse of at least two weeks between Gardner's request for accommodations and WKU's negative response concerning the CEPH report is not "sufficient to allow an inference" that the response would have been different had Gardner not made the request, and Gardner has offered no other evidence suggesting a connection between the two events. *Id.* (internal quotation marks omitted).

### 2. March 2010 Information Request

Also retaliatory, Gardner contends, was a March 2010 memorandum she received from Huda Melky, director of WKU's Office of Equal Opportunity/Affirmative Action/University ADA Services, requesting that Gardner provide "updated information concerning [her] physical limitations and recommended accommodations." (D.N. 29-1 at PageID # 1790; *see* D.N. 33 at PageID # 1868) Gardner asserts that she thus "was required to requalify as a person with a disability" and that this constituted an "adverse employment act." (D.N. 33 at PageID # 1868) Again, however, she makes no attempt to show that Melky's memorandum was "enough to dissuade a reasonable person from engaging in the protected activity." *A.C.*, 711 F.3d at 69 (internal quotation marks omitted).

Nor could she credibly make such an argument. Being required to provide updated medical information—some of which pertained to Gardner's February 2010 request for new accommodations related to her hearing—is at most a "minor annoyance[]." *Id.* And as noted in the memorandum, the request Gardner received was consistent with WKU policy. (D.N. 29-1 at PageID # 1790; *see* D.N. 23-2 at PageID # 538 (Gardner's original accommodation-request form, signed by Gardner in 2006, stating that the requester "understand[s] that the University

may request additional personal health or medical information"))  In light of Gardner's request for new accommodations in February 2010, there is nothing inherently suspicious about the memorandum she received from Melky a few weeks later, and Gardner has presented no evidence suggesting that the request for updated information was retaliatory.  Because she has not shown that she suffered any adverse action, Gardner fails to establish a prima facie case of retaliation.

### III.

Gardner has not established a prima facie case of retaliation or failure to accommodate.  Accordingly, it is hereby

**ORDERED** that the defendants' Motion for Summary Judgment (D.N. 30) is **GRANTED**.  A separate judgment will be entered this date.